IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38353

| | |
|---|---|
| IN THE MATTER OF THE ) | |
| TERMINATION OF THE PARENTAL ) | |
| RIGHTS OF JOHN DOE. ) | |
| IDAHO DEPARTMENT OF HEALTH & ) | |
| WELFARE, ) | 2011 Opinion No. 45 |
| ) | |
|     Petitioner-Appellant, ) | Filed: July 27, 2011 |
| ) | |
| v. ) | Stephen W. Kenyon, Clerk |
| ) | |
| JOHN (2010-28) DOE, ) | |
| ) | |
|     Respondent-Appellant. ) | |
| ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cathleen MacGregor-Irby, Magistrate.

Decree terminating parental rights, <u>affirmed</u>.

Joseph L. Ellsworth of Ellsworth, Kallas, Talboy & DeFranco, PLLC, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for respondent.
_____

MELANSON, Judge

John Doe appeals from the magistrate's decree terminating his parental rights to his child. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Doe has a history of methamphetamine use and felony convictions. In September 2003, Doe pled guilty to possession of a controlled substance. He was placed on a rider and, after successful completion, was released on probation in March 2004. In September 2004, Doe was sentenced to a unified term of five years, with a minimum period of confinement of two years, following a guilty plea to felony eluding a police officer. Based on this guilty plea, his probation for possession of a controlled substance was revoked and that original sentence was ordered into

1

execution. Doe was paroled in 2006. During the next two years, Doe continued to use methamphetamine. Doe was sober for a period of eight months in 2008, but relapsed following the death of his mother.

In late 2008, Doe learned that he and his wife were expecting a child. In early January 2009, Doe was charged with possession of a controlled substance and unlawful possession of a firearm by a felon. J.S. was born January 28, 2009, to Doe and his wife (Mother). Doe pled guilty to the charges and was sentenced in February 2010 to a unified term of seven years, with a minimum period of confinement of three years, for possession of a controlled substance and a consecutive indeterminate term of three years for unlawful possession of a firearm.[1] Doe has been continuously incarcerated since J.S.'s birth.

For the first five months of her life, J.S. was cared for by Mother. Like Doe, Mother had a substance abuse problem with attendant felony criminal charges. This termination action commenced as a child protection case on June 3, 2009, when Mother, with J.S. in her arms, entered the house of a neighbor insisting the neighbors were hiding another child who Mother believed was supposed to be under her care. Mother was confused and paranoid and she claimed she could hear the lost child in the pipes of the neighbor's house. The neighbors stated that Mother whipped J.S. around in her arms as she searched the house for the other child. Law enforcement was called to the scene and declared J.S. to be in imminent danger. J.S. was taken into the care of the Department of Health and Welfare. A motion to place temporary custody in the Department was filed, and a hearing was held on the motion on June 4, 2009. Thereafter, a custody order was entered as to both parents which granted temporary legal custody to the Department.

On July 10, 2009, a case plan was filed with the court which outlined nine tasks for Doe to complete to facilitate reunification with J.S. Four of the tasks were to be completed upon Doe's release from prison.[2] The remaining five tasks required Doe to: (1) successfully complete

---

[1] Doe will be eligible for parole in 2012, and his sentences will be satisfied December 31, 2018.

[2] Task 1b states that "upon his release" Doe is to gain and maintain a stable, safe, and healthy home environment. Task 1c states that "upon his release" Doe is to allow the assigned Department social worker to make random home visits to check on the family's progress. Task 1d states that "upon his release" Doe is to gain and maintain appropriate employment.

a parenting class; (2) attend scheduled visitations with J.S.; (3) address and resolve his current and pending legal issues and refrain from further illegal activity; (4) participate in a substance abuse evaluation and provide the Department with tests demonstrating he was free of alcohol and drugs; and (5) participate in a cognitive self-change class. On August 13, 2009, the magistrate issued an order granting legal custody of J.S. to the Department and approving Doe's case plan. That order also approved a case plan as to Mother. Mother worked on her case plan between August 2009 and June 2010. During this time, J.S. was placed with her maternal grandmother as Foster Mother.[3] Ultimately, Mother was unsuccessful in reuniting with J.S because Mother was incarcerated in June 2010 and failed to complete her case plan.

In July 2010, the Department filed a petition for termination of parental rights as to both parents. The Department filed an amended petition for termination on October 7, 2010. The amended petition requested termination as to Doe on two grounds: Doe was incarcerated and likely to remain incarcerated for a substantial period of time during J.S.'s minority and Doe had neglected J.S. by failing to comply with the case plan and reunification with J.S. had not occurred within fifteen of the last twenty-two months. A hearing was conducted on the petition for termination on October 7, 2010. The magistrate terminated Doe's parental rights in a memorandum decision dated December 3, 2010.[4] Doe appeals.

## II.

### STANDARD OF REVIEW

The United States Supreme Court has held that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 255-56 (1978). *See also In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009). Concordantly, the Idaho Legislature has, in the Child Protective Act,

Another unnumbered task required Doe "upon his release" to attend medical appointments for J.S.

[3]     The maternal grandmother is also the prospective adoptive parent of J.S.

[4]     The magistrate also terminated Mother's parental rights. Mother's termination is the subject of a separate appeal.

directed "that the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship." I.C. § 16-1601. Likewise, the Termination of Parent and Child Relationship Act states that "implicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved." I.C. § 16-2001(2).

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence." *Santosky*, 455 U.S. at 746. *See also* I.C. § 16-2009; *Doe*, 146 Idaho at 761-62, 203 P.3d at 691-92; *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Several factors call for employment of an elevated standard of proof: the permanence and irrevocability of a termination of parental rights; the imprecision of the standards to be applied, such as the best interest of the child, which leave determinations unusually open to the subjective values of the judge; and the reality that the state's ability to assemble its case almost inevitably dwarfs the parents' ability to mount a defense. *See Santosky*, 455 U.S. at 759-63.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said, however, that, the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.

### ANALYSIS

Idaho Code Section 16-2005 authorizes termination of the parent-child relationship when it is in the child's best interests and any one of several factors exist, including when the parent

has neglected the child or the parent has been incarcerated and is likely to remain incarcerated for a substantial period during the child's minority. I.C. § 16-2005(1)(b), (e). Here, the Department's petition alleged that termination was proper because termination was in J.S.'s best interests and Doe was incarcerated and likely to remain so for a substantial period of J.S.'s minority and because Doe neglected J.S. by failing to comply with his case plan.

Doe makes three arguments on appeal. First, Doe argues that substantial evidence does not support the decision to terminate his parental rights because he has been incarcerated and is likely to remain incarcerated for a substantial period of J.S.'s minority. Second, Doe asserts that the decision to terminate his parental rights because he neglected J.S. by failing to comply with the case plan in fifteen of the last twenty-two months was not supported by substantial evidence. Finally, Doe asserts that the district court erred in finding that termination was in J.S.'s best interests.

## A.    Incarceration

We must determine whether there was substantial evidence to support the magistrate's finding that Doe has been incarcerated and is likely to remain incarcerated for a substantial period of J.S.'s minority. In this case, we must engage in statutory interpretation to determine what constitutes a "substantial period of time during the child's minority." I.C. § 16-2005(1)(e). This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). The language of a statute is to be given its plain, obvious, and rational meaning. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *Burnight*, 132 Idaho at 659, 978 P.2d at 219; *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

When this Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode*, 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give a statute an interpretation which will not render it a

5

nullity. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). Constructions of a statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004); *State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Only one published Idaho case has interpreted the issue of termination under I.C. § 16-2005(1)(e). *See Doe*, 148 Idaho 243, 220 P.3d 1062. In *Doe*, the Idaho Supreme Court upheld the termination of a father's parental rights because there was substantial evidence to support a finding that Doe would be incarcerated for a substantial period of his children's minorities. *Id*. at 246-47, 220 P.3d at 1065-66. The father was incarcerated when his two children were four and six years old. The Court noted that, if the father was to serve only his determinate sentence, his children would be twenty-eight and thirty years old when he was released. The Court held that, because the father would be in prison for the remainder of his children's minorities, there was substantial evidence supporting termination on the basis that he would be incarcerated for a substantial period during his children's minorities. *Id*.

Other jurisdictions with statutes similar to Idaho's have also interpreted the meaning of a substantial period of a child's minority. Like I.C. § 16-2005(1)(e), the Arkansas Code provides that a parent's rights may be terminated if the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life and if termination would be in the child's best interests. Ark. Code Ann. § 9-27-341(b)(3)(A), (B)(viii). In *Fields v. Arkansas Dep't of Human Servs.*, 289 S.W.3d 134, 136 (Ark. Ct. App. 2008), the father was incarcerated when the child was five weeks old and was serving a ten-year sentence of imprisonment followed by a ten-year suspended sentence. At the time of termination, the child was nineteen months old and the father had served only eleven months of his sentence. The father would be eligible for parole six months after the termination hearing, but the court noted that, given a disciplinary problem in prison, it was not certain the father would be paroled. *Id*. The court held that, considering the young age of the child, the father's sentence constituted a substantial period of the child's life. *Id*. at 139.

The *Fields* court went on to hold that termination was in the best interests of the child. *Id*. at 140. It noted that the father's release from prison could not be predicted with certainty and, even if the father was paroled on the earliest available date, the child could not be returned to him immediately. The court considered that before termination the father dealt drugs instead of working, kept drugs and weapons in the home, and his home was filthy and without running

water. *Id.* The court reasoned that, given these issues, there would be a prolonged delay after the father was released from prison before he would be prepared to care for the child and that further delay and impermanence would not be in the best interests of the child. *Id.*

Other jurisdictions have adopted bright-line rules for calculating when a parent will be deemed incarcerated for a substantial period of a child's minority. Florida has adopted a percentage calculation method. Florida Statute Section 39.806(1)(d)(1) provides that the state may petition for the termination of parental rights when the parent of a child is incarcerated and the period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of eighteen years. In *B.C. v. Florida Dep't of Children and Families*, 887 So. 2d 1046, 1052 (Fla. 2004), the child was four years old at the time the petition for termination was filed and the father had four years remaining on his sentence. The Florida Supreme Court held that language of Fla. Stat. § 39.806(1)(d)(1) requires the courts to evaluate whether the parent's future period of incarceration constitutes a substantial portion of the time before the child reaches eighteen, not whether the time the parent has been incarcerated is a substantial portion of the child's life to date. Applying this forward-looking construction of Fla. Stat. § 39.806(1)(d)(1), the court concluded that the remaining four years of the father's sentence was not a substantial portion of the child's minority because it amounted to only 28.6 percent of the remaining fourteen years of the child's minority. *Id.* at 1054.

Texas employs a statutory bright-line rule which specifies that a parent must be facing a minimum period of incarceration before the state may initiate termination proceedings. In Texas, parental rights may be terminated if the parent has knowingly engaged in criminal conduct for which the parent is incarcerated and, as a result, the parent is unable to care for the child for not less than two years from the date the petition to terminate is filed. Tex. Fam. Code Ann. § 161.001(1)(Q). In *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003), the Texas Supreme Court held that the language of Section 161.001(1)(Q) applies prospectively. The court held that, if a parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the state may petition for termination to ensure that the child will not be neglected in the future. In *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006), the court held that the mere possibility that a parent will be paroled before being incarcerated for two years does not prevent a fact-finder from terminating parental rights on the basis the parent

will remain incarcerated for two years. If the fact-finder weighs the evidence and determines the parent is unlikely to be paroled, its findings must be accorded due deference. *Id*.

Unlike the Florida statute, I.C. § 16-2005(1)(e) does not require an analysis of whether the prospective period of the parent's incarceration constitutes a substantial percentage of the time remaining in the child's minority. Further, I.C. § 16-2005(1)(e) does not provide a specific minimum period of incarceration which is necessary for the state to petition for termination like the Texas statute does. Rather, I.C. § 16-2005(1)(e) focuses both on prior incarceration and the likelihood of future incarceration. We leave to the legislature the question of whether to adopt a bright-line rule to describe when a parent will be incarcerated for a substantial period of a child's minority as has been done in other jurisdictions. Instead, we will analyze cases arising under I.C. § 16-2005(1)(e) on a case-by-case basis, applying the intent of the legislature as expressed in the statute. The word "substantial" means important, essential, or considerable in quantity. *Merriam Webster Collegiate Dictionary* 1174 (10th ed. 1994). Therefore, in determining whether a parent's period of incarceration is substantial, courts may consider numerous factors including, but not limited to: the length of the parent's incarceration; the probability that the parent will be paroled; the probable length of time after release before the parent would regain custody of the child; and the age of the child, including particularly whether he or she is in the formative younger years.

In this case, J.S. was twenty months old at the time of termination, and Doe has been incarcerated since her birth. If Doe remains incarcerated until his December 2018 sentence satisfaction date, J.S. will be nine years old. If Doe is released on his first parole date in 2012, J.S. will be three years old. Even if Doe is released on parole, he will not be eligible to care for J.S. until he can demonstrate that he is able to provide a safe and stable home environment. Given Doe's history of drug abuse, prior criminal record and past failure to successfully complete the requirements of probation, it is likely that considerable time will pass before he is able to regain custody of J.S. In addition, J.S. is in her formative years. We recognize that an absence of an incarcerated parent may be more significant to a very young child than to an older one. The record demonstrates that, in this case, Doe has been and is likely to remain incarcerated for a substantial (important or meaningful) period of J.S.'s minority. Therefore, the district court did not err in finding that Doe's incarceration provided a basis for termination under I.C. § 16-2005(1)(e). Accordingly, we need not consider whether the district court erred in terminating

Doe's parental rights under I.C. § 16-2002(3)(b) for neglect of J.S. by failing to complete the case plan.

## B.     Best Interests of the Child

Finally, we must consider whether there was substantial evidence supporting the district court's finding that termination would be in J.S.'s best interests. *See* I.C. § 16-2005(1). This Court will consider a parent's incarceration as only one factor which is relevant in determining whether termination is in the child's best interests. *Doe*, 148 Idaho at 840, 230 P.3d at 450 (upholding decision to terminate a mother's parental rights and considering that she would likely be incarcerated for five years, her anger issues, her inability to accept responsibility, and her prior performance on probation and during her rider). In cases where the parent is incarcerated, we will consider several factors in determining whether termination is in a child's best interests including, among other things, the nature and circumstances of the offense that led to incarceration, prior charged or uncharged criminal behavior while in the home, previous incarcerations and rehabilitations, the impact incarceration has had on the child's well-being, and the quality of contacts or efforts made by the parent to keep a meaningful relationship with the child. *Doe*, 143 Idaho at 349, 144 P.3d at 603 (Burdick, J., dissenting).

Doe has a long history of drug addiction and criminal convictions. Doe began using drugs at age fourteen. In 2003, Doe was convicted of felony possession of a controlled substance and was placed on probation. One year later, he incurred a second conviction for eluding a police officer and was incarcerated. After serving three years, Doe was paroled in 2006. Doe continued to use methamphetamine while on parole. Doe testified that, in 2008, he was sober for eight months but relapsed following the death of his mother. In early 2009, Doe incurred new drug-related charges even though he was aware that he was about to become a father. The record demonstrates that Doe has made efforts to maintain his parental relationship with J.S. through frequent visits. Doe has not, however, provided J.S. with the type of day-to-day support normally associated with parenting and it is likely it will be a long time, once he is released from prison, before Doe will be prepared to parent J.S. It is of great importance that, as a very young child, J.S. is offered permanency and stability. This, Doe cannot provide. Thus, there is substantial evidence in the record to support the magistrate's finding that termination would be in J.S.'s best interests. Therefore, we hold the magistrate did not err in finding that termination was in J.S.'s best interests.

## IV.
## CONCLUSION

The magistrate did not err in finding that Doe's parental rights should be terminated because he was likely to be incarcerated for a substantial period of J.S.'s minority and termination was in J.S.'s best interests. Therefore, the magistrate's decree terminating Doe's parental rights is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge GRATTON and Judge LANSING, **CONCUR.**