IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39394

| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) | 2012 Opinion No. 15 |
|---|---|---|
| Petitioner-Appellant, | ) | Filed: March 16, 2012 |
| v. | ) | Stephen W. Kenyon, Clerk |
| JOHN (2011-20) DOE, | ) | |
| Defendant-Appellant. | ) | |

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Bonneville County.  Hon. Ralph L. Savage, Magistrate.

Decree terminating parental rights, affirmed.

James H. Barrett, Bonneville County Public Defender; Scott J. Davis, Deputy Appellate Public Defender, Idaho Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark V. Withers, Deputy Attorney General, Idaho Falls, for respondent.

_____

MELANSON, Judge

John Doe appeals from the magistrate's decree terminating his parental rights to his two children.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Doe has an extensive criminal history that includes multiple charges of battery, aggravated assault, malicious injury to property, and driving under the influence.  Doe also has a history of gang association and controlled substance use.  Doe's children were born in 2008 and in 2009.  In November 2009, Doe was on probation for a malicious injury to property conviction and absconded from the Wood Project, a therapeutic court for individuals who would otherwise be sentenced to serve a period of incarceration.  Thereafter, Mother did not allow Doe to see the children, and Doe did not have physical custody or care of his children.

On March 4, 2010, Doe met with Mother in a car and attempted to flee from police who had outstanding warrants for his arrest. Doe had a firearm in his possession and shot several times at a police officer. Doe then attempted to flee on foot but was arrested and charged with aggravated assault on a police officer. Doe was high on methamphetamine and alcohol at the time of this incident and tested positive for marijuana. Doe remained in jail until he was convicted of aggravated assault with an enhancement for use of a deadly weapon in July 2010, and was sentenced to a unified term of fifteen years, with a minimum period of confinement of six years. Doe's earliest parole eligibility date is March 21, 2016. However, if required to serve his entire sentence, Doe will not be released until March 20, 2025.

Beginning in January 2010, the Idaho Department of Health and Welfare received six referrals regarding neglect, physical abuse, and lack of supervision of the children by Mother. Like Doe, Mother has a history of criminal charges and controlled substance use. The last referral occurred after Mother took one of the children to the hospital in 2010 because the child ingested medication Mother took for substance abuse addiction. Mother left the hospital and did not return until the next evening. After attempting, unsuccessfully, to locate Mother from April to May and determining that the children were being primarily cared for by their teenage aunt, the Department filed a petition under the Child Protective Act (CPA), I.C. §§ 16-1601 to 16-1637, requesting that the children be placed in shelter care. On May 11, the magistrate ordered that the children be placed in shelter care. At the ensuing shelter care hearing, the magistrate court placed the children in the legal custody of the Department. A guardian ad litem was appointed on May 13.

After an adjudicatory hearing on June 10, the magistrate found that the children were Indian children within the meaning of the Indian Child Welfare Act (ICWA), 25 U.S.C.A. §§ 1901 to 1923, and that appropriate notice had been given to the Indian custodian, Indian Tribe, or Secretary of the Interior as required by the Act. The magistrate determined that the children came within the jurisdiction of the court under the CPA due to abandonment, neglect, or lacking a stable home environment. Determining it was in the best interest of the children, the magistrate vested legal custody in the Department. The magistrate concluded that the Department had made reasonable efforts prior to placement of the children in shelter care to prevent the need for such placement. Finally, the magistrate ordered the Department to prepare a

2

written case plan with involvement of Doe, Mother, and the appointed guardian ad litem and scheduled a planning hearing.

After the planning hearing on July 7, the magistrate approved the case plan and ordered Doe and Mother to comply. It was agreed that the children would be placed in foster care with their maternal grandfather.[1] The case plan required Doe to attend all visits and doctor appointments with the children when appropriate, maintain stable employment for six months, and maintain a stable residence for more than six months in an environment safe to raise the children. Doe was also required to participate in a substance abuse assessment, receive a mental health evaluation, follow all treatment recommendations, remain free of all substances, deal with his current legal issues, refrain from further criminal activity, submit to random urinalysis tests, and participate in all available classes while incarcerated. Doe was appointed counsel on July 13. After a review hearing on November 9, the magistrate found that it was in the best interest of the children to remain in the legal custody of the Department and scheduled a permanency hearing.

A petition to terminate the parental rights of Doe and Mother was filed by the Department in April 2011. The petition requested termination on several grounds, including abandonment and neglect. After a hearing on May 9, the magistrate approved the Department's permanency plan consisting of termination of the parental rights of Doe and Mother. The magistrate also authorized the Department to suspend further efforts to reunify the children with Doe and Mother given the approved permanency plan, the length of the case, the failure of the parents to comply with their case plans, the pending hearing on the petition to terminate parental rights, and the criminal history and incarceration of Doe and Mother. Mother voluntarily consented to terminate her parental rights on August 15 prior to the hearing on the petition to terminate parental rights. The magistrate terminated Doe's parental rights on November 7. Doe appeals.

## II.

## STANDARD OF REVIEW

The United States Supreme Court has held that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by the Fourteenth

---

[1] The maternal grandfather is also the prospective adoptive parent of the children.

Amendment of the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 255-56 (1978). *See also In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009). Concordantly, the Idaho Legislature directed "that the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship." I.C. § 16-1601. Likewise, the Termination of Parent and Child Relationship Act states that "implicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved." I.C. § 16-2001(2). Additionally, in 1978 Congress passed the ICWA to address concerns surrounding the high incidence of removal of Indian children from their Indian families and tribes and the placement of Indian children in adoptive or foster homes outside of their extended families, tribes, and cultures. 25 U.S.C.A. §§ 1901, 1902.

Both the CPA and ICWA contain formalities required for the termination of parental rights. Idaho Code Section 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence." *Santosky*, 455 U.S. at 746. *See also* I.C. § 16-2009; *Doe*, 146 Idaho at 761-62, 203 P.3d at 691-92; *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). As such, on appeal from a decision terminating parental rights pursuant to the CPA, due process requires this Court to determine whether the trial court's decision to terminate is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and

convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600. We conduct an independent review of the record that was before the magistrate. *Id*.

In order to invoke the requirements of the ICWA, state courts must first determine whether the proceedings are "child custody proceedings" as defined by 25 U.S.C.A. § 1903(1) and whether the child involved is an "Indian child" as defined by 25 U.S.C.A. § 1903(4). If these prerequisites are met, the ICWA supplies procedural requirements and substantive standards that must be used by the state court. The ICWA requires that notice of the proceeding be given to the Indian parent and the Indian tribe and that the tribe be given the opportunity to intervene in the proceedings. 25 U.S.C.A. §§ 1911(c), 1912(a).[2] Additionally, subsection 1912(d) provides:

> Any party seeking to effect a . . . termination of parental rights to[ ] an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

The trial court's finding of active remedial efforts must be supported by substantial and competent evidence to endure on appeal. *In re Doe*, 127 Idaho 452, 458, 902 P.2d 477, 483 (1995). Further, subsection 1912(f) states:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Where the burden of proof at trial was beyond a reasonable doubt, as in subsection 1912(f), we will uphold such a finding on appeal if there was substantial evidence from which a rational trier of fact could have reached its conclusion beyond a reasonable doubt. *State v. Filson*, 101 Idaho

---

[2] The magistrate found that notice of the pending proceedings regarding the children and right to intervention was sent to the appropriate Indian tribe.

381, 386, 613 P.2d 938, 943 (1980). Whether the trial court correctly applied the ICWA to the facts of this case is a question of law and is subject to free review by this Court. *Doe*, 127 Idaho at 456, 902 P.2d at 481.[3]

## III.

## ANALYSIS

The magistrate found statutory grounds for termination of Doe's parental rights based on neglect, I.C. § 16-2005(1)(b), and the inability to discharge his parental responsibilities for a prolonged period that would be injurious to the health, morals, or well-being of the children, I.C. § 16-2005(1)(d). The magistrate also found that Doe abandoned the children because he willfully failed to maintain a normal parental relationship with them, both before and during his incarceration, by failing to provide reasonable support and failing to have regular personal contact with the children. *See* I.C. § 16-2002(5). The magistrate further found that Doe's incarceration provided a clear basis for termination of his parental rights under I.C. § 16-2005(1)(e). The magistrate also determined that it was in the best interest of the children that Doe's parental rights be terminated. *See* I.C. § 16-2005(1).

The magistrate found that the children are Indian children within the meaning of 25 U.S.C.A. § 1903(4) because they were the biological children of Doe, a member of an Indian tribe. It is undisputed that the ICWA applies in this case. The magistrate determined that the Department had made active efforts, as required by the Act, to prevent the breakup of Doe's family by trying to resolve issues related to reunification, but those efforts were unsuccessful. *See* 25 U.S.C.A. § 1912(d). Finally, the magistrate found beyond a reasonable doubt that continued custody of the children by Doe would likely result in serious emotional or physical damage to the children. *See* 25 U.S.C.A. § 1912(f).

---

[3]     We also note that 25 U.S.C.A. § 1915(b) requires, in the absence of good cause to the contrary, that any foster care or preadoptive placement be made preferentially with a member of the Indian child's extended family; a foster home licensed, approved, or specified by the Indian child's tribe; an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or an institution for children approved by an Indian tribe or operated by and Indian organization that has a program suitable to meet the Indian child's needs. Here, placement of the children with their maternal grandfather meets this requirement.

## A. Best Interest of the Children

Doe argues that the magistrate's determination that termination of his parental rights was in the best interest of the children was not supported by any evidence.[4] Accordingly, we must consider whether there was substantial and competent evidence supporting the magistrate's conclusion that termination would be in the best interest of the children. *See* I.C. § 16-2005(1).

Courts consider a number of factors in determining whether termination of parental rights is in the best interest of the child, including whether the parent has the ability to change his or her conduct to assume parental responsibilities, the parent's employment status and history, the parent's history of substance abuse, whether the parent has provided financial support, whether there is a good relationship between the child and foster parent, whether the child has improved while in foster care, whether the child's needs are being met, and the child's need for stability and certainty. *See Doe v. Dep't of Health & Welfare, Human Serv. Div.*, 141 Idaho 511, 516-17, 112 P.3d 799, 804-05 (2005); *Doe v. Roe*, 133 Idaho 805, 809-10, 992 P.2d 1205, 1209-10 (1999); *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 59, 64-66, 232 P.3d 837, 842-44 (Ct. App. 2010). This Court will also consider a parent's incarceration as a factor which is relevant in determining whether termination is in the child's best interest. *Idaho Dep't of Health & Welfare v. Doe*, 148 Idaho 832, 840, 230 P.3d 442, 450 (Ct. App. 2010). In cases where the parent is incarcerated, we will consider several factors in determining whether termination is in a child's best interest including, among other things, the nature and circumstances of the offense that led to incarceration, prior charged or uncharged criminal behavior while in the home, previous incarcerations and rehabilitations, the impact incarceration has had on the child's well-being, and the quality of contacts or efforts made by the parent to keep a meaningful relationship with the child. *Idaho Dep't of Health & Welfare v. Doe,* 151 Idaho 605, 611, 261 P.3d 882, 888 (Ct. App. 2011).

In finding that termination of Doe's parental rights was in the best interest of the children, the magistrate considered that the children were thriving in a stable and safe home environment with their maternal grandfather. The case manager testified that the children were thriving, healthy, happy, having their medical needs met, developmentally on track, and doing well with their maternal grandfather. The guardian ad litem also testified that the maternal grandfather

---

[4] Doe does not challenge the magistrate's findings regarding the statutory grounds for termination.

7

provided a great home environment, met the children's daily and medical needs, and parented them.

The magistrate also noted that, if Doe's parental rights were not terminated, the children would continue to have significant instability in their lives because they would be without a father present to help direct their daily lives, the living situation would be continuously temporary, and the date on which they would be reunified with their father would be uncertain and cause anxiety for the children. As mentioned above, Doe's earliest parole eligibility date for his latest conviction is March 21, 2016, at which time his children would be seven and eight years old. However, if required to serve his entire sentence, Doe would not be released until March 20, 2025, at which time both children would be in their late teens. During his time in prison, Doe violated prison rules, which the magistrate noted may impact Doe's parole status and may affect his release at the early parole date. Both the case manager and guardian ad litem testified that the uncertainty of Doe's release date would cause instability. The magistrate also determined that it would likely take Doe some time to be able to support his children financially once released and this would cause further instability. Indeed, while in jail and prison since March 4, 2010, Doe has not provided any financial support for the benefit of his children and Doe would need time to demonstrate upon release that he is fully capable of doing so.

Additionally, as the magistrate noted, there is uncertainty that Doe could or would comply with a case plan upon his release or whether he would relapse and fall back into his former behavior. While Doe has been unable to complete many of the tasks outlined by the case plan in this matter because of his incarceration, Doe's behavior caused him to be unable to complete tasks that could otherwise have been completed while incarcerated, such as attending all visits with the children. Indeed, during his time in jail and prison, Doe's misconduct caused his visitation privileges to be suspended and prevented him from having contact with his children for periods of time. Also, as noted above, Doe absconded from the supervision of a therapeutic court in November 2009, relapsed into his former behavior of drug use and criminal activity, and did not see his children until after his arrest and incarceration in March 2010.

The magistrate found that termination of Doe's parental rights gives the children stability and certainty because they were in a home where they are loved, nurtured, cared for, and having their needs met and know who their caregiver and parent would be. The magistrate determined that allowing further reunification efforts or some other long-term option would add uncertainty

8

and instability to the children's lives and noted that this determination was verified by the testimony of the guardian ad litem and case manager. The magistrate recognized that Doe loves the children, but emphasized that the children need stability, moral direction, discipline, and physical and emotional care that Doe's behavior and attitudes show he is unable to provide. As such, the magistrate concluded that clear and convincing evidence supported a finding that termination of Doe's parental rights was in the best interest of the children.

According to the record, Doe has a long history of criminal charges, gang association, and controlled substance use. Doe was convicted of petit theft and battery in 2004; frequenting a place of controlled substance use and malicious injury to property in 2005; disturbing the peace and driving under the influence in 2007; disturbing the peace, driving under the influence, damaging property by graffiti, malicious injury to property, and battery in 2008; probation violation in 2009; and, the charge for which he is currently incarcerated, aggravated assault with an enhancement for use of a deadly weapon in the commission of a felony in 2010. During this latest incident that resulted in his imprisonment, Doe was high on methamphetamine and alcohol and tested positive for marijuana. Doe continued to incur new criminal charges and use methamphetamine after the birth of the children. While the record also demonstrates that Doe had attempted to maintain some contact while incarcerated with his children by way of telephone and letters, Doe had not provided the children with the type of day-to-day support normally associated with parenting and it is likely it will be a long time, once he is released from prison, before Doe will be prepared to parent them. It is of great importance that, as very young children, the children are offered permanency and stability. This, Doe cannot provide. Thus, there was substantial and competent evidence supporting the magistrate's determination that termination of Doe's parental rights would be in the best interest of the children.

**B.      Indian Child Welfare Act**

Doe argues that the magistrate erred because the Department did not make active efforts to prevent the breakup of his family. Doe further asserts that the magistrate erred in terminating his parental rights because there was no substantial evidence from which a rational trier of fact could have reached its conclusion beyond a reasonable doubt that continued custody of the children by Doe would likely result in serious emotional or physical damage to the children. As noted above, the magistrate found that the Department made active efforts to prevent the breakup of Doe's family by trying to resolve issues related to reunification, but those efforts were

unsuccessful because Doe frustrated those efforts. The magistrate also found that continued custody of the children by Doe would be likely to result in serious emotional or physical damage to the children.

We reiterate that, whether the trial court correctly applied the ICWA to the facts of this case is a question of law and is subject to free review by this Court. *Doe*, 127 Idaho at 456, 902 P.2d at 481. The trial court's finding of active remedial efforts must be supported by substantial and competent evidence to endure on appeal. *Id.* at 458, 902 P.2d at 483. However, where the burden of proof at trial was beyond a reasonable doubt, as in 25 U.S.C.A. § 1912(f), we will uphold such a finding on appeal if there was substantial evidence from which a rational trier of fact could have reached its conclusion beyond a reasonable doubt. *See Filson*, 101 Idaho at 386, 613 P.2d at 943.

Accordingly, we must first determine whether the magistrate's finding--that the Department made active efforts to prevent the breakup of Doe's family by trying to resolve issues related to reunification, but those efforts were unsuccessful because Doe frustrated those efforts by his actions and behavior--was supported by substantial and competent evidence. While the ICWA does not define the term "active efforts," in *Doe*, 127 Idaho at 459, 902 P.2d at 484, the Idaho Supreme Court determined that the types of remedial and rehabilitative services to be required under subsection 1912(d) depend on the facts of each case. In that case, which is the only Idaho case to consider the adequacy of active efforts, the Court upheld the trial court's determination that active efforts were made to prevent the breakup of the Indian family, but had been unavailing. First, the adoptive parents gave the father notice regarding his right to file a paternity claim for the child and an opportunity to indicate willingness to support the child. The tribe filed a paternity claim on the father's behalf, but the father never took any action to support or initiate contact with the child. Second, the mother asked the father to attend counseling with a church social worker before the child's birth, but the father refused. Third, the state attempted to help the father support his children by initiating a wage withholding for child support, and the father continued to refuse to pay support. Fourth, and most compelling to the Court, an attorney was appointed to represent the father but, for four years, the father failed to cooperate in any way with his attorney or participate in the proceedings. The Court noted that "it seems there could be no better services than appointment of an attorney at public expense, and the many hours of attorney time spent by representing the tribe in defending the father's interest. Yet, the father has

consistently exhibited indifference." *Id.* at 459, 902 P.2d at 484. The Court held that, under the circumstances of that case, the trial court's finding of adequate remedial services was supported by substantial competent evidence. *Id.*

However, that case provides little guidance because the facts of this case are readily distinguishable. Here, Doe was incarcerated from the beginning of proceedings regarding the children, made efforts to contact his children by phone and letters, and did not fail to participate in the proceedings after appointment of a public defender. Given the lack of other Idaho case law on what constitutes adequate active efforts under the ICWA, we turn to other jurisdictions for guidance.

Similar to the Idaho Supreme Court's determination in *Doe*, 127 Idaho at 459, 902 P.2d at 484, that the types of remedial and rehabilitative services to be required under subsection 1912(d) depend on the facts of each case, in *A.A. v. State, Dep't of Family & Youth Services*, 982 P.2d 256, 261 (Alaska 1999), the Alaska Supreme Court noted that a case-by-case approach must be taken to distinguish between active and passive efforts. In *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 849 (Alaska 2009), the court stated that, "as opposed to passive efforts such as simply developing a plan for the parent to follow, active efforts require that the state actually help the parent develop the skills required to keep custody of the children." The Alaska Supreme Court has also noted that a parent's incarceration significantly affects the scope of the active efforts that the state must make to satisfy the statutory requirement. *A.A.*, 982 P.2d at 261. Further, the court determined:

> While "[n]either incarceration nor doubtful prospects for rehabilitation will relieve the State of its duty under ICWA to make active remedial efforts," the practical circumstances surrounding a parent's incarceration--the difficulty of providing resources to inmates generally, the unavailability of specific resources, and the length of incarceration--may have a direct bearing on what active remedial efforts are possible.

*Id.* (footnote omitted).

Here, with respect to Doe,[5] the Department attempted to arrange visitation with Doe and the children while he was incarcerated. However, as mentioned above, Doe lost visitation

---

[5]     We note that in *Dashiell R.*, 222 P.3d at 850, the court viewed the state's efforts regarding the mother as an important aspect of the state's active efforts to keep the family together. The court emphasized that, "had the children been able to stay with the mother, who

privileges during periods of time due to poor behavior.[6] The Department also had a family group decision-making meeting with Doe while he was in jail. Doe testified that his understanding was that the case plan was prepared partly on what was discussed at that meeting, and the Department's case manager testified that she had contact with Doe in preparation of the case plan. The case manager additionally testified that she met with Doe in jail on two occasions, once to discuss the battery incident and again to discuss voluntary termination of Doe's parental rights. Further, while a Department intern was supervising a visit of Mother with the children, Mother was allowed to call Doe in prison and facilitate conversation with the children. Additionally, the Department placed the children with the maternal grandfather, who both Mother and Doe preferred. The ICWA expert also testified that the Department kept Doe involved and informed with monthly notices of the children's ongoing improvement or needs.

However, there is no evidence that the Department provided assistance to Doe regarding the requirements of his case plan to complete a substance abuse assessment or mental health evaluation. Indeed, Doe testified that he had not been given either the substance abuse

was not incarcerated, there is no indication Dashiell's parental rights would have been terminated, because there would have been no need for the children to be placed elsewhere." However, we also note that Utah does not follow this same line of thought. Specifically, in *State ex rel. C.D.* v. *State*, 200 P.3d 194, 205 (Utah Ct. App. 2008), the court held that "the State must demonstrate that active efforts have been made with respect to the specific parent or Indian custodian from whom the Indian children are being removed or provide evidence that such efforts would be futile." We further note that the Department made very active efforts with respect to Mother in this case. The Department attempted to locate and contact the Mother on several occasions, referred her for a mental health assessment, assisted her in looking into housing and other services at a transitional shelter, held a group meeting with her while incarcerated to discuss development of the case plan, scheduled meetings with her to discuss her progress on case plan tasks, arranged visitations with the children, worked with Mother to have a substance abuse assessment done, and worked to establish contact with her pre-trial coordinator to work out a drug-testing plan. However, because we conclude that the Department made sufficient active efforts with respect to Doe given his lengthy incarceration, we need not consider the active efforts the Department made with respect to Mother nor must we decide whether such efforts alone would be sufficient.

[6] While in jail, Doe was accused of choking another inmate on at least two occasions and was charged with battery, which was later dismissed. After Doe was transported to prison, Doe was cited for violations of prison rules, including tattooing.

assessment or mental health evaluation and did not know he was required to get the latter. The case manager testified that Doe never asked for assistance in any item of his case plan, did not provide information to her as to any kind of substance abuse assessment, and never asked for coordination on a mental health evaluation.[7] The case manager further testified that Doe had sent her one letter during his incarceration in which he reported that he was trying to get enrolled in a parenting class, but indicated the class would not be available until a year before his release date. The case manager also testified that, in this letter, Doe had questions about his parental rights, but there is no evidence that the case manager responded to Doe's letter.

Absent Doe's lengthy incarceration, we would conclude that, by not providing Doe with any information about how to complete a substance abuse assessment or mental health evaluation and failing to respond to Doe's correspondence, the Department failed to make active efforts with respect to Doe to meet the requirement of 25 U.S.C.A. § 1912(d). However, we are persuaded by the reasoning of the Alaska Supreme Court that a parent's incarceration significantly affects the scope of the active efforts that the state must make to satisfy the statutory requirement. *See A.A.*, 982 P.2d at 261. Further, we agree that the length of incarceration is an appropriate factor to consider in evaluating the state's efforts. *See id.*

As mentioned above, the magistrate found that Doe's incarceration provided a clear basis for termination of his parental rights because Doe is likely to remain incarcerated for a substantial period of time during the children's minority. *See* I.C. § 16-2005(1)(e). Again, Doe's earliest parole eligibility is March 21, 2016, at which time his children will be seven and eight years old. However, if required to serve his entire sentence, Doe will not be released until March 20, 2025, at which time both children will be in their late teens. As such, we agree that Doe is likely to remain incarcerated for a substantial (important or meaningful) period of the children's minorities. *See Doe,* 151 Idaho at 611-12, 261 P.3d at 887-88. Therefore, we conclude that, given the difficulty of providing resources to Doe while incarcerated and the length of Doe's sentence, the Department's efforts were within the scope of the active efforts that

---

[7]     The case manager did note in a report to the court that Doe was not in the community in order to receive or be referred to a mental health assessment.

the state must make to satisfy the statutory requirement.[8]  Therefore, the magistrate's finding--that the Department made active efforts to prevent the breakup of Doe's family by trying to resolve issues related to reunification, but those efforts were unsuccessful because Doe frustrated any of those efforts by his actions and behavior--was supported by substantial and competent evidence.

We must now determine whether there was substantial evidence from which a rational trier of fact could have reached its conclusion beyond a reasonable doubt that continued custody of the children by Doe would likely result in serious emotional or physical damage to the children.  The magistrate found:

> After reviewing all of the evidence and testimony in this matter, the Court can find beyond a reasonable doubt that continued custody of [the children] with [Doe] would be likely to result in serious emotional or physical damage to them. [Doe] is incarcerated and unable to provide a home for the children.  As set forth above, the lack of stability and permanence, would clearly cause emotional damage.  Because of [Doe's] prior behavior and the likelihood of continued participation in criminal behavior and the escalation of this behavior, the children would be subject to harm, either emotional or physical.

Accordingly, as required under 25 U.S.C.A. § 1912(f), the magistrate considered whether continued custody of the children by Doe was likely to result in serious emotional or physical damage to the children.  Further, the ICWA requires this finding to be supported by evidence, including testimony of qualified expert witnesses.  25 U.S.C.A. § 1912(f).  As noted above, an ICWA expert testified during Doe's trial.  The ICWA expert testified that she was a qualified ICWA expert, had spoken in five different counties, and testified as an ICWA expert about forty-five times.  She testified that she first became qualified as an ICWA expert in April of 2006 and then again in March 2011.  Indeed, her curriculum vitae indicates that she attended qualified

---

[8]  In *Dashiell*, the court held that an analysis of the active efforts undertaken is not limited to those of the Department when the parent is incarcerated, but includes remedial and rehabilitative services offered by the Department of Corrections.  *Dashiell*, 222 P.3d at 849-50. To the extent such services are applicable to the active efforts determination, we note that, in this case, Doe testified he took the one parenting class available to him in the prison and was working on his general education degree.  Other programs, such as relapse prevention and anger management, would be available in the year or two preceding his release date.

expert witness training for ICWA cases in April 2006 and March 2011. The ICWA expert's curriculum vitate further indicates that she holds bachelor's and master's degrees in social work.

Based upon her review of Doe's case, the ICWA expert testified that she believed continued custody of the children by Doe was likely to result in serious physical or emotional damage to them because Doe's incarceration and inability to be with or provide for them for many years would cause instability and lack of permanency. Further, the ICWA expert indicated that termination of Doe's parental rights would facilitate such permanency and stability. Accordingly, we hold that the magistrate's finding that continued custody of the children by Doe would be likely to result in serious emotional or physical damage to the children was supported by qualified expert witness testimony as required by the ICWA.

In addition to the expert witness testimony, the case manager testified that having worked with Doe throughout this case, as well as having watched the children improve in the care of their maternal grandfather, termination of Doe's parental rights would be in the best interest of the children. The case manager based this opinion on Doe's incarceration and inability to care for the children, inability to provide financial support or housing, and inability to meet parenting responsibilities for a significant amount of time. The case manager also testified that continued custody of the children by Doe was likely to be injurious to the health of the children because Doe was likely to remain incarcerated for a substantial period of time during their minority and the children needed permanency and stability quickly, needed to know where they were going to live and who their caretaker was, and could not wait for Doe to be ready to parent. The guardian ad litem also testified that termination of Doe's parental rights was in the best interest of the children because of Doe's lifestyle before he was incarcerated involving drug use and violent crime, his incarceration for a significant period of time, and the need for the children to have a safe and stable home environment without uncertainty about where they were going to live and what would happen upon Doe's release from prison. Based on the record before us, we conclude that there was substantial evidence from which the magistrate could find beyond a reasonable doubt that continued custody by Doe was likely to cause serious emotional or physical damage to the children.

## IV.

## CONCLUSION

There was substantial and competent evidence supporting the magistrate's finding that termination of Doe's parental rights would be in the best interest of the children. Additionally, the magistrate's finding that the Department made active efforts to prevent the breakup of Doe's family by trying to resolve issues related to reunification, but those efforts were unsuccessful, was supported by substantial and competent evidence. Finally, there was substantial evidence from which the magistrate could find beyond a reasonable doubt that continued custody by Doe was likely to cause serious emotional or physical damage to the children. Therefore, the magistrate's decree terminating Doe's parental rights to the children is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**