**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket 42529**

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2014-23) DOE. | ) ) ) ) |
| ------------------------------------------------------- | ) |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) |
| Petitioner-Respondent, | ) ) |
| v. | ) ) |
| JANE (2014-23) DOE, | ) ) |
| Respondent-Appellant. | ) ) ) |

Boise, January 2015 Term

2015 Opinion No. 7

Filed: January 23, 2015

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Payette County. Hon. Brian D. Lee, Magistrate Judge.

The decision of the magistrate court is <u>affirmed</u>.

Law Office of Kelly Whiting, P.C., Fruitland, for appellant.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent.

———————————————

J. JONES, Justice

Jane Doe appeals from an order terminating her parental rights to her son, TSD. Because TSD is an "Indian child" as that term is defined by the Indian Child Welfare Act, the magistrate court was required to make findings in addition to those required by Idaho law. Among other findings, the Department of Health and Welfare ("DHW") was required to satisfy the court that it made "active efforts" to "prevent the breakup of the Indian family." On appeal, Doe argues that the magistrate court erred in finding that DHW made such efforts and erred in failing to make that finding by clear and convincing evidence.

**I.**
**FACTUAL AND PROCEDURAL HISTORY**

TSD was removed from Jane Doe's custody on April 14, 2012, when an officer

1

responded to a call reporting a toddler left unattended in a trailer court. The officer recognized the child as TSD, then two years old, from previous calls to Doe's residence. When the officer returned TSD to Doe, he discovered that Doe and three minors were intoxicated.[1] According to the officer, Doe admitted to being intoxicated, expressed concern that she had a problem with alcohol abuse, and stated that she needed treatment. The officer took TSD into custody pursuant to the Child Protective Act, Idaho Code sections 16-1601 to 16-1643, and TSD was placed in temporary custody with DHW. Doe then stipulated to a shelter care order and TSD was placed in the care of Doe's aunt. Following a hearing on May 7, 2012, the magistrate court granted legal custody of TSD to DHW. In the same order, the court determined that TSD is an "Indian child" as that phrase is defined in the Indian Child Welfare Act ("ICWA"), 25 U.S.C. sections 1901–1963, and that the Act governs proceedings with respect to TSD.

DHW submitted an extensive case plan with the goal of reunifying TSD with his parents. That plan was endorsed by the court in a case plan order on June 7, 2012. The plan called for Doe to complete substance abuse treatment, a mental health evaluation, and parenting classes, and to abide by the terms of her probation, attend TSD's medical and therapy appointments, and regularly attend visitation with TSD.

Approximately a year later, in June of 2013, the State petitioned the magistrate court to terminate the parental rights of Doe and TSD's father on the recommendation of DHW and TSD's guardian ad litem. The guardian ad litem noted that Doe "continued [to] rel[y] on alcohol," "has not made any significant progress on her Case Plan, has failed to attend [TSD's] treatment appointments, and [has] fail[ed] to attend many of the scheduled visits with [TSD] . . . ." DHW likewise claimed that Doe had not resolved her addiction to alcohol and had not completed treatment for substance abuse; failed to secure a mental health evaluation, despite a referral to do so; was not consistently attending TSD's medical and therapy appointments; was not consistently visiting TSD; did not have permanent housing or employment; and was in violation of parole with warrants out for her arrest.

The trial commenced on March 6, 2014, and the court heard testimony from fifteen witnesses over four days in March and April, after which the magistrate court granted the petition to terminate parental rights to TSD. The court found by clear and convincing evidence

---

[1] TSD's father was not living with Doe and TSD at the time. He testified that he and Doe ended their relationship as a result of Doe's excessive drinking. TSD's father is not a party to this appeal.

that TSD's parents neglected and abandoned him and that TSD's best interests would be served by terminating their parental rights. In addition, the court made findings required by ICWA. It found that DHW made "active efforts" to prevent the breakup of the family and found, by evidence beyond a reasonable doubt, that continued custody of TSD by Doe and TSD's father would likely result in serious emotional or physical harm to him.

The magistrate court entered judgment on October 2, 2014, and Doe filed a notice of appeal the next day. Doe does not dispute the magistrate court's finding that she neglected and abandoned TSD, or its finding that Doe's continued custody of TSD would likely result in serious emotional or physical harm to him. Doe argues only that the magistrate court erred in concluding that DHW made active efforts to prevent the breakup of the family and that the magistrate court should have, but did not, make such a finding by clear and convincing evidence.

## II.
## ISSUES ON APPEAL

1. Whether the magistrate court erred by failing to apply the clear and convincing evidence standard to its finding that the State made active efforts to prevent the breakup of the family.

2. Whether the magistrate court's finding that the State made active efforts to prevent the breakup of the family is supported by substantial and competent evidence.

## III.
## DISCUSSION

### A. Standard of Review and Applicable Law

Pursuant to Idaho Code section 16-2005(1), a court may terminate parental rights if it finds that doing so is in the best interests of the child and that at least one of five grounds for termination is satisfied. Those grounds include abandonment or neglect of the child. I.C. § 16-2005(1)(a) & (b). "The trial court must find that grounds for terminating parental rights have been proved by clear and convincing evidence." *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010); I.C. § 16-2009. The ICWA is addressed to the concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes

3

and institutions . . . ." 25 U.S.C. § 1901(4). Where an "Indian child"[2] is the subject of a termination proceeding, the ICWA requires the court to find "by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f).[3] In addition, the party seeking the termination of parental rights must "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts proved unsuccessful." 25 U.S.C. § 1912(d).

"On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision." *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010). Substantial, competent evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Welch v. Cowles Pub. Co.*, 127 Idaho 361, 365, 900 P.2d 1372, 1376 (1995). This Court must "conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties." *Doe*, 150 Idaho at 49, 244 P.3d at 193 (internal quotation marks omitted). "Whether the trial court correctly applied ICWA to the facts of this case is a question of law and is subject to free review by this Court." *Matter of Baby Boy Doe*, 127 Idaho 452, 456, 902 P.2d 477, 481 (1995). "[T]he trial court's finding of adequate remedial efforts [required by the ICWA] must be supported by substantial and competent evidence to endure on appeal." *Id.* at 458, 902 P.2d at 483.

**B. The magistrate court found that DHW made active efforts to prevent the breakup of the family as required by the ICWA.**

Doe argues that while the magistrate court was satisfied that DHW made active efforts to prevent the breakup of the family and that those efforts were unsuccessful, the court "did not make a finding that active efforts were met by clear and convincing evidence." According to

---

[2] "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). There is no dispute that TSD is an Indian child covered by the Act.

[3] There is no dispute that the magistrate court made that finding or that the finding was properly supported by expert testimony.

4

Doe, this failure "is a fatal flaw in . . . [the court's] findings" because "the due process clause requires that the grounds for termination must be shown by clear and convincing evidence."

Contrary to Doe's assertion, the magistrate court purported to make its finding with respect to active efforts by clear and convincing evidence. The court stated that "[t]his court is satisfied that active efforts were made by the Department in this case to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts were unsuccessful." That finding is one on a list of conclusions reached by the court, which list is preceded by the statement that "[t]he court reaches the following conclusions by clear and convincing evidence."

Even so, the magistrate court was not required to find by clear and convincing evidence that DHW made active efforts to prevent the breakup of the family. "When the State intervenes to terminate the parent-child relationship, the requisites of due process must be met. This requirement necessitates the State prove the grounds for terminating a parent-child relationship by clear and convincing evidence." *In re Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006) (citations omitted). The grounds for termination are the conditions in Idaho Code section 16-2005 that motivate the termination proceeding. *See Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1065 (2009) ("It is well settled that, in a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence . . . . Idaho Code § 16-2005 provides the conditions under which termination of parental rights may be granted . . . .") (internal quotation marks and citations omitted). The magistrate court found by clear and convincing evidence that TSD was abandoned and neglected by his parents and that it would be in his best interests for their parental rights to be terminated. In doing so, the court would have satisfied due process even if it had employed a less demanding standard in making its finding with respect to active efforts.

The ICWA also does not require that the finding with respect to active efforts be made by clear and convincing evidence. This Court considered the evidentiary standard governing 25 U.S.C. section 1912(d) in *Matter of Baby Boy Doe* and held that the finding of active efforts need not be made by evidence beyond a reasonable doubt. *Matter of Baby Boy Doe*, 127 Idaho at 457–58, 902 P.2d at 482–83. The Court based that conclusion partially on language in other subsections of section 1912. Subsection (e) requires that before an Indian child can be placed in foster care, the court must make a finding "by clear and convincing evidence . . . that the

continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." Subsection (f) requires the same finding by evidence beyond a reasonable doubt before parental rights with respect to an Indian child can be terminated. This Court held that because "Congress knew how to place a more stringent evidentiary standard in subsection (d) if it wished," the fact that it did not do so provides reason to think that it did not intend to require that the finding mandated by subsection (d) be made by evidence beyond a reasonable doubt. *Matter of Baby Boy Doe*, 127 Idaho at 458, 902 P.2d at 483. Parallel reasoning suggests that Congress did not intend to require that the finding mandated by subsection (d) be made by clear and convincing evidence. The legislative history associated with the ICWA shows that Congress was sensitive to evidentiary standards in drafting section 1912:

> Subsections (e) and (f) establish evidentiary standards for foster care placement or termination of parental rights. As introduced, H.R. 12533 required a "beyond a reasonable doubt" standard for both actions. While the committee feels that the removal of a child from the parents is a penalty as great, if not greater, than a criminal penalty, it amended the bill to reduce the standard to "clear and convincing" in the case of foster care where parental rights are not terminated.

H.R. REP. 95-1386, at 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7530, 7545. "Congress displayed considered precision in articulating the evidentiary burdens it was imposing." *Matter of Baby Boy Doe*, 127 Idaho at 458, 902 P.2d at 483. The fact that Congress carefully calibrated the evidentiary standard in subsection (e) to provide for a clear and convincing evidence standard, but provided no similar standard in subsection (d), suggests that Congress did not intend to require that courts make a finding with respect to active efforts by clear and convincing evidence.

25 U.S.C. section 1912(d) requires that a party seeking termination of parental rights with respect to an Indian child "shall satisfy" the court that active efforts to prevent the breakup of the family have been made, not that the party show by clear and convincing evidence that such efforts have been made. The magistrate court stated that it was satisfied that DHW made active efforts to prevent the breakup of the family. In doing so, it made the finding required by 25 U.S.C. section 1912(d).

**C. There is substantial and competent evidence to support the magistrate court's finding that DHW made active efforts to prevent the breakup of the family.**

Doe argues that the magistrate court erred in finding that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family . . . ." 25 U.S.C. § 1912(d).

"[T]he types of remedial and rehabilitative services to be required under subsection (d) depend on the facts of each case." *Matter of Baby Boy Doe*, 127 Idaho at 459, 902 P.2d at 484. "The term active efforts, by definition, implies heightened responsibility compared to passive efforts." *In re A.N.*, 106 P.3d 556, 560 (Mont. 2005). "[A]s opposed to passive efforts such as simply developing a plan for the parent to follow, active efforts require that the state actually help the parent develop the skills required to keep custody of the children." *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 797, 805, 275 P.3d 23, 31 (Ct. App. 2012) (quoting *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 849 (Alaska 2009)).

There is substantial and competent evidence to support the magistrate court's finding that DHW made active efforts to prevent the breakup of the family. The State arranged for weekly supervised visits with TSD that would give the parents the opportunity for feedback with regard to the challenges they faced in caring for him, but Doe discontinued participation in the visitation sessions. TSD was enrolled in a form of individual counseling specifically designed to strengthen his relationship with his parents and Doe was encouraged to participate, but attended only a handful of times. TSD was scheduled for regular medical and therapeutic appointments for the purpose of understanding and addressing his developmental delays, but Doe never attended more than a few. DHW arranged for Doe to take parenting classes, but she dropped out and did not return. Finally, DHW arranged for Doe to participate in multiple drug and alcohol treatment programs and, though Doe completed one such program, she eventually dropped out of another and resumed her regular abuse of alcohol.

In *Matter of Baby Boy Doe*, this Court upheld a finding that active efforts were made to reunite a father with his child where "the father [was given] notice . . . regarding his right to file a paternity claim for the child and an opportunity to indicate willingness to support the child"; the father was invited, but refused, "to attend counselling with a church social worker before the child's birth"; the State encouraged the father to support the child by initiating a wage withholding; and the father was provided with an attorney, but refused to participate in

7

proceedings regarding his child. *Matter of Baby Boy Doe*, 127 Idaho at 458–59, 902 P.2d at 483–84. DHW made efforts at least as active as these.

In *Matter of Baby Boy Doe*, the Court emphasized as "most telling" that the father refused to participate in the proceedings regarding the termination of his parental rights and refused to cooperate with efforts to prevent the breakup of his family. *Id.*; *see also Dale H. v. State, Dep't of Health & Soc. Servs.*, 235 P.3d 203, 213 (Alaska 2010) (holding that "[i]n evaluating whether OCS met its active efforts burden, the superior court may consider a parent's demonstrated lack of willingness to participate in treatment") (internal quotation marks omitted). In the time that TSD was in DHW's custody prior to trial, Doe attended 23 of the 77 visitation appointments with TSD, 3 of the 80 counseling appointments with TSD, and 5 of TSD's 64 speech therapy appointments. In May of 2013, a warrant was issued for Doe's arrest when Doe, then on probation for alcohol related offenses, failed to report to her probation officer. From that time through the end of trial, neither her probation officer nor DHW had any information regarding Doe's whereabouts. Doe's case worker called numbers at which she thought Doe might be reached, made unannounced visits to Doe's last known address, and left notes and cards asking Doe to contact DHW, but failed to reach Doe. Except for a brief exchange of text messages instigated by Doe in June of 2013, when Doe requested additional treatment for alcohol and substance abuse, Doe's DHW case worker has had no contact with her since April of 2013. Though the State provided Doe an attorney, Doe did not appear for any part of the trial regarding the termination of her parental rights and had not seen TSD for more than a year when the trial closed.

Doe does not dispute any of this, but points to two alleged failures on the part of DHW as evidence that it failed to make active efforts as required by 25 U.S.C. section 1912(d). First, Doe argues that she requested additional alcohol and substance abuse treatment in June of 2013 but was told by DHW that there was nothing they could do. Second, Doe argues that TSD's foster mother interfered with Doe's relationship with TSD by objecting to providing Doe with contact information for a child care facility, telling Doe to stop attending therapy appointments for TSD, and objecting to visitations between TSD and Doe at Doe's home.

DHW's alleged failings are overstated. Doe claims that she requested additional inpatient alcohol and substance abuse treatment in June of 2013 but was denied treatment by her DHW case worker. Doe's DHW case worker testified that, though Doe had been out of contact and

unreachable for some time, Doe contacted her by text message on June 10, 2013, to request additional treatment. The case worker testified that she then contacted BPA to secure funding for the treatment.[4] BPA responded that Doe "has to do some work" to establish additional funding for treatment and that Doe's case worker could not establish such funding without participation from Doe. The case worker then told Doe "she needed to take that responsibility. There was nothing that I could do." The testimony does not make clear what "work" Doe was asked to do by BPA, but a report submitted to the court on June 28, 2013, by Doe's DHW case worker states that BPA asked Doe to complete an additional intake over the telephone. The evidence does not suggest that DHW simply refused additional treatment for Doe, but merely that DHW asked Doe to contact BPA to complete an intake and secure additional funding. According to Doe's case worker, DHW "wanted to get [Doe] back in [treatment] . . . . [and] knew that was best for her," but Doe did not contact BPA to secure the funding.

Next, Doe claims that TSD's foster mother interfered with DHW's efforts to reunite Doe with TSD. TSD's foster mother acknowledges that she objected to a DHW employee contacting a child care facility on behalf of Doe. She testified that she objected because she thought it was important for Doe to take responsibility for some of TSD's care and to contact the facility herself. TSD's foster mother also acknowledges telling Doe and TSD's father that if they would not attend TSD's therapy appointments consistently, then they should not attend at all. She claims that she did so because Doe and TSD's father were attending those appointments very rarely and the therapists and counsellors emphasized the importance of consistency in the attendance of both parents. Finally, TSD's foster mother acknowledges that she expressed concern about visitations between Doe and TSD at Doe's new residence. She testified that she did so because Doe had just moved into the residence, did not have furniture, and Doe was regularly asleep and unprepared for the visits when TSD arrived. Importantly, none of the conduct to which Doe objects involved DHW directly. Rather, DHW allegedly failed only to the extent that it did not run interference between Doe and TSD's foster mother. But, there is no evidence that DHW was aware of the communications between Doe and TSD's foster mother

---

[4] Though BPA is not identified by the parties or in the testimony, the acronym apparently refers to Business Psychology Associates, the State contractor that approves funding and provides referrals for substance abuse treatment.

and no evidence that any of these actions on the part of TSD's foster mother impacted DHW's efforts on behalf of Doe or Doe's participation in those efforts in any way.

Even assuming that DHW failed in the ways identified by Doe, one or two failures on the part of DHW do not entail wholesale failure with respect to the active efforts requirement. This Court must consider whether the State made active efforts to provide remedial services over the course of the proceeding as a whole, despite one or more alleged failings during particular periods. *See, e.g.*, *Dale H. v. State, Dep't of Health & Soc. Servs.*, 235 P.3d 203, 213–14 (Alaska 2010) (noting that though the state failed to provide remedial services during certain brief periods, it made active efforts "over the case as a whole"); *In re Child of E.M.D.*, No. A04-157, 2004 WL 1728610, at *9 (Minn. Ct. App. Aug. 3, 2004) (unpublished) (holding that the "court must consider the efforts made *throughout the course of the proceedings.* Otherwise, any interruption in the provision of services, however brief or justified, would compel a determination that active efforts were not made") (emphasis in original). Given the extensive efforts identified by the magistrate court over the proceeding as a whole, there is substantial and competent evidence to support its finding of active efforts even if DHW erred in the ways alleged by Doe.

## IV.
## CONCLUSION

We affirm the magistrate court's decision terminating Doe's parental rights and award costs on appeal to the Department of Health and Welfare.


Chief Justice BURDICK, and Justices EISMANN, W. JONES, and HORTON CONCUR.