# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50905

| | |
|---|---|
| In the Matter of Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) ) |
| Petitioner-Respondent, | ) ) |
| v. | ) ) |
| JANE DOE (2023-27), | ) ) |
| Respondent-Appellant. | ) ) ) |

Filed: October 30, 2023

Melanie Gagnepain, Clerk

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Anson L. Call, II, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

David R. Martinez, Chief Bannock County Public Defender; Jessalyn R. Hopkin, Deputy Public Defender, Pocatello, for appellant.

Hon. Raúl R. Labrador, Attorney General; Jason R. Chandler, Deputy Attorney General, Pocatello, for respondent.

---

LORELLO, Chief Judge

Jane Doe (2023-27) appeals from the judgment terminating her parental rights. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of the minor child in this action who was born in 2021. The child tested positive for methamphetamine at the time of her birth. When the Idaho Department of Health and Welfare and law enforcement went to follow up on the child, Doe was arrested on a warrant. Temporary custody of the child was awarded to the Department. The magistrate court approved a

1

case plan and conducted several review hearings while the child was in the Department's custody. In June 2022, the Department filed a petition to terminate the parental rights of the child's parents. Following a hearing, the magistrate court denied the petition because it concluded that the testimony from the Indian Child Welfare Act (ICWA)[1] expert was not "sufficiently reliable" because the expert "did not demonstrate sufficient familiarity with the facts of this case to be able to testify to whether the child's continued custody by the parents" would likely "result in serious emotional or physical damage to the child."

The Department filed a second petition to terminate parental rights in March 2023. Following the second termination trial, the magistrate court terminated Doe's parental rights, concluding that clear and convincing evidence showed that Doe abandoned and neglected the child; the Department made active efforts to provide remedial services and rehabilitative programs directed toward reunification as required by ICWA; and termination is in the child's best interests.[2] Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe*

---

[1]    Doe is a member of the Eastern Shoshone Tribe; the child's father and the child are members of the Shoshone Bannock Tribe.

[2]    The magistrate court also terminated the father's parental rights. The decision to terminate the father's parental rights is not at issue in this appeal.

*v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Whether a trial court correctly applied the requirements of ICWA to the facts of a case is a question of law subject to free review on appeal. *Doe v. Doe*, 127 Idaho 452, 456, 902 P.2d 477, 481 (1995).

## III.

## ANALYSIS

Doe challenges the sufficiency of the evidence supporting the magistrate court's findings that Doe abandoned and neglected the child and that termination is in the child's best interests. Doe also challenges the sufficiency of the evidence to support the magistrate court's finding that the Department made active efforts under the ICWA. The Department responds that substantial and competent evidence supports the magistrate court's termination decision. We affirm the magistrate court's judgment terminating Doe's parental rights.

**A.      Statutory Basis for Termination**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five

factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate court found by clear and convincing evidence that the Department had established statutory grounds for termination through abandonment and neglect. Doe challenges the magistrate court's finding for each of these grounds.[3]

### 1.      Abandonment

The magistrate court found that Doe abandoned the child. Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship and whether such a relationship exists depends on the facts and circumstances of each case. *Doe I v. Doe II*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the parent then has the burden of production to present evidence of just cause. *Id.* If the magistrate

---

[3]      We note that there are no citations to the record in the argument section of Doe's brief. This does not comply with I.A.R. 35(a)(6) which requires citations to the record in the argument section of the brief. Accordingly, the factual assertions in Doe's argument section lack supporting citations to the record. This Court will not search the record on appeal for error. *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 103, 113, 244 P.3d 247, 257 (Ct. App. 2010). We also note the respondent's brief suffers from the same deficiency; I.A.R. 35(b)(6) requires the respondent's argument section to cite to the parts of the transcript and record relied upon.

court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

The magistrate court found Doe abandoned the child by willfully failing to maintain a normal parent-child relationship with the child, without just cause, for a period of more than one year. The magistrate court further found: (1) the child had been in the legal custody of the Department for more than twenty months; (2) Doe had periods of consistency in visitation but had not had a visit with the child for several months; (3) Doe was again incarcerated, following a period of release, due to a failure to comply with her probation conditions; (4) Doe, while released from custody, had the ability to establish and maintain a relationship with the child but failed to do so; (5) Doe had been unable to maintain stable employment and only had periods of limited employment; (6) Doe did not obtain stable housing; and (7) Doe did not complete a parenting class or any treatment programs. Substantial and competent evidence in the record supports these findings.

Doe argues that the magistrate court erred when it failed to consider Doe's "efforts regardless of her incarceration." Doe's argument focuses on the periods of incarceration, which Doe concedes "made having regular visits, continuing treatment, and communicating with the Department difficult," while arguing that the conduct was not willful. Further, Doe argues that a finding of abandonment cannot rely solely on a parent's incarceration and that not having custody of a child for over a year is not evidence of abandonment. However, the magistrate court's finding of abandonment was not based only upon Doe's periods of incarceration. Rather, the magistrate court discussed the requirements and expectations of Doe while out of custody, the attempts made by the Department in assisting Doe, and the lack of compliance in forming and maintaining a normal parental relationship. In essence, Doe's assertions are an attempt to have this Court reweigh evidence. It is well established that appellate courts in Idaho do not reweigh evidence. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Further, Doe's argument does not address the overall lack of compliance with the case plan, lack of attendance at visits, and the lack of support provided to the child while Doe was in the community. For instance, the record reflects that, while out of custody, Doe regularly missed a significant portion of the scheduled visits with the child even though the Department provided transportation. Doe testified that missing those visits made it

hard to maintain a relationship with the child. Doe has failed to show that the magistrate court erred in finding she abandoned the child.

### 2. Neglect

The magistrate court also found that Doe neglected the child by failing to provide proper parental care and control, subsistence, and medical care and control necessary for the child's well-being and by failing to complete her case plan. We will address each finding in turn.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. With respect to neglect, the magistrate court specifically found that Doe: (1) had not provided housing, subsistence, medical care, or any basic necessity for the child; (2) had not attended a visit with the child for several months; and (3) had again been incarcerated after having been released on probation. Substantial and competent evidence in the record supports these findings.

Doe testified during the termination hearing that she had ingested illegal substances during pregnancy, that the child was born prematurely, and that the child tested positive for illegal substances at birth. Shortly thereafter, Doe was arrested and unable to provide parental care for the child, at which point the child was brought into the care of the Department. Subsequently, Doe was released on probation several times. However, Doe committed new offenses and violated the terms and conditions of her probation, resulting in periods of incarceration. Doe was incarcerated at the time of the termination hearing. Doe also testified to being inconsistent with visitation and that the lack of visitation made it hard to keep a relationship with the child and develop parenting skills. Additionally, Doe testified she relapsed on illicit substances while out in the community, failed to maintain stable employment, and lost her previous housing. Doe also testified that she did not have the supplies necessary to provide care for the child at that time of the termination trial.

Doe contends the magistrate court's findings "lack particularity" and that, "contrary" to the magistrate court's opinion, she "did have housing when she was not incarcerated." Doe also argues the magistrate court "failed to recognize" that her lack of visitation was "due to incarceration, not

6

refusal." Doe asserts the removal of the child "was not based on the lack of housing or mistreatment of the child" and that, although Doe did not have the supplies to care for the child at the time of the termination trial, "there was no testimony" that Doe "was unable to provide those things." According to Doe, the magistrate court's decision was "inconsistent with the evidence provided at trial" and there was not substantial and competent evidence to find that she neglected the child because she provided "housing, subsistence, medical care or basic necessities" for the child "at different points throughout the case." That Doe may have made some effort over the course of the child protection case does not demonstrate that the magistrate court's findings are not supported by substantial and competent evidence. Moreover, Doe's contrary arguments are conclusory and unsupported by citations to the record or any reference to evidence undermining the magistrate court's findings. Conclusory allegations and assertions of fact, without citation to the record below, are not sufficient to support an argument on appeal. I.A.R. 35(a)(6); *Nicholson v. Bennett*, 166 Idaho 720, 727, 462 P.3d 1184, 1191 (Ct. App. 2020).

Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department.[4] I.C. § 16-2002(3)(b). The magistrate court found Doe neglected the child as defined in I.C. § 16-2002(3)(b). Substantial and competent evidence in the record supports these findings.

Following Doe's arrest and the child being declared in imminent danger, a case plan was developed that required Doe to: (1) demonstrate financial stability and the ability to care for the child through obtaining employment; (2) obtain stable housing for herself and the child; (3) participate in a parenting class; (4) seek necessary medical and developmental services for the child; and (5) participate in substance abuse treatment and engage in drug testing.

The magistrate court found that Doe was unable to maintain stable employment and had only worked for limited periods. At the termination trial in May 2023, Doe testified she was

---

[4] Doe does not contest the magistrate court's finding that the Department had temporary or legal custody of the child for fifteen of the most recent twenty-two months preceding the termination and that reunification had not occurred.

unemployed and indicated that the last time she had a job was in January 2023, at which time she had a job for "about two weeks." Doe further testified that, prior to those two weeks in January 2023, she had been employed from "September to October" 2021 at one place of employment and had done harvest from "August to September" 2021.

The magistrate court also found Doe had been unable to maintain stable housing--Doe's housing arrangements were never approved or vetted by the Department and they only lasted for short periods of time. Doe testified that, from August 2021 to April 2022, she stayed at her grandmother's house intermittently while also spending some periods of time incarcerated. Doe remained incarcerated from April 2022 to October 2022, at which time she was released and lived in a hotel. Doe lived at the hotel until February 2023, but that housing arrangement was no longer available at the time of the termination trial.

The magistrate court found that Doe had not completed a parenting class or any of her other treatment programs. Doe testified that, although the Department provided transportation assistance, she failed to complete treatment and had since been discharged. Doe further testified that, despite two referrals for parenting classes, she had not completed either. Doe continued to use illicit substances throughout the case and was incarcerated on several occasions.

Doe argues that she "did comply with her case plan at times," while acknowledging she "did not complete every goal of the case plan." Doe provides no legal authority to support her position that, under I.C. § 16-2002(3)(b), occasional compliance without completion of a case plan prevents a finding of neglect. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *See Idaho Dep't of Health & Welfare v. Doe (2015-15)*, 158 Idaho 764, 768-69, 351 P.3d 1222, 1226-27 (2015) (declining to consider parent's argument "that he 'substantially complied' with the case plan" because the parent failed to provide legal authority).

Doe has failed to show the magistrate court's neglect findings are erroneous.

**B.     Best Interests of Child**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the

parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that termination is in the child's best interests because: (1) the child is thriving in her current placement; (2) Doe failed to create a stable home environment for the child; (3) the child needs stability in her life, which the foster placement has provided; (4) the child had been able to develop connections with her tribal community through the foster placement, which would be maintained by the foster placement; and (5) Doe was incarcerated again and not in a position to support the child despite having ample opportunity to do so. Substantial and competent evidence supports the magistrate court's determination that terminating Doe's parental rights is in the child's best interests.

Doe contends that, although she "needs more time to stabilize," it would not be in the child's best interest to "extinguish a loving relationship." Doe claims there was "ample testimony" that there exists a "significant and beneficial bond" between her and the child but does not provide a citation to the record for such testimony. This Court will not search the record on appeal for error. *Idaho Dep't of Health & Welfare v. Doe I*, 150 Idaho 103, 113, 244 P.3d 247, 257 (Ct. App. 2010). Further, Doe does not present any argument or legal authority to support her position. Doe has failed to demonstrate the magistrate court erred in concluding that termination is in the child's best interests.

## C. Indian Child Welfare Act--Active Efforts

The ICWA sets forth procedural requirements and substantive standards that must be applied by the state court in termination of parental rights proceedings which involve an "Indian child" as defined by 25 U.S.C. § 1903(4). Where an Indian child is the subject of a termination proceeding, the party seeking to terminate parental rights must "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the

9

breakup of the Indian family and that these efforts proved unsuccessful."[5] 25 U.S.C. § 1912(d); *see also Idaho Dep't of Health & Welfare v. Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015). A parent's incarceration significantly affects the scope of the active efforts that the Department must make to satisfy the ICWA. *Idaho Dep't of Health & Welfare v. Doe (2011-23)*, 152 Idaho 797, 807, 275 P.3d 23, 33 (Ct. App. 2012). The trial court's finding of active remedial efforts must be supported by substantial and competent evidence. *Idaho Dep't of Health & Welfare v. Doe (2011-20)*, 152 Idaho 797, 802, 275 P.3d 23, 28 (Ct. App. 2012).

According to the ICWA:

> Active effort means affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family. Where an agency is involved in the child-custody proceeding, active efforts must involve assisting the parent or parents or Indian custodian through the steps of a case plan and with accessing or developing the resources necessary to satisfy the case plan. To the maximum extent possible, active efforts should be provided in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's Tribe and should be conducted in partnership with the Indian child and the Indian child's parents, extended family members, Indian custodians, and Tribe.

25 C.F.R. § 23.2. "Active efforts are to be tailored to the facts and circumstances of the case." *Id.* Examples of active efforts include: (1) conducting a comprehensive assessment of the circumstances of the Indian child's family, with a focus on reunification; (2) identifying appropriate services and helping the parent(s) to overcome barriers, including actively assisting the parent(s) in obtaining services; (3) identifying, notifying, and inviting representatives from the child's Tribe to participate in providing support and services, permanency planning, and resolution of placement; (4) searching for the child's extended family members and consulting with those individuals to provide family structure and support for the child and parent(s); (5) offering and employing all available and culturally appropriate family preservation strategies, and facilitating use of remedial and rehabilitative services available through the child's Tribe; (6) taking steps to

---

[5]     It appears that, unlike a challenge to the Department's reasonable efforts (which must be raised on appeal from the child protection case), the active efforts finding in ICWA cases must be made as part of the termination decision and is, therefore, reviewable on appeal from the judgment terminating parental rights. *See In re Doe*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015) (noting ICWA requires an active effort finding in a termination proceeding and reviewing that finding on appeal from the judgment terminating parental rights).

keep siblings together whenever possible; (7) consistent with the health, safety, and welfare of the child, supporting regular visits between the child and the parent(s) or Indian custodian(s) in the most natural setting possible, including trial home visits; (8) identifying community resources including housing, financial, transportation, mental health, substance abuse, and peer support, and actively assist the parent(s) or, when appropriate, the child's family, in accessing and utilizing the resources; (9) monitoring progress and participation in services; (10) considering alternative ways to address the parent's needs and, where appropriate, the family, if optimum services are unavailable or do not exist; and (11) providing post-reunification services and monitoring. 25 C.F.R. § 23.2(1)-(11).

The magistrate court found the Department "made active efforts throughout the child protective case to avoid the breakup of the Indian family." The magistrate court further found "[t]hese efforts included providing transportation"; facilitating and encouraging visitation; attempting to "secure parenting classes" through "multiple referrals"; and working with Doe to "identify appropriate substance abuse treatment," which included tribal resources. More specifically, the magistrate court found the Department sent two different referrals for parenting classes and approved parenting classes provided by the Tribe and a parenting option through Doe's probation program. The Department also provided lists of substance abuse treatment providers and offered assistance obtaining assessments, including through tribal resources. In addition, the ICWA expert testified that the Department made active and continuous efforts throughout the case. Substantial and competent evidence in the record supports the magistrate court's finding regarding active efforts.

Doe argues the magistrate court "exaggerated" the Department's efforts and contends the Department's efforts were "merely" passive. According to Doe, referrals to parenting classes and providing a list of substance abuse treatment providers are passive efforts and do not satisfy the active efforts required by the ICWA. In a similar vein, Doe argues that the Department's efforts in her case were no different than the Department's efforts in a "regular" non-ICWA case and, therefore, the efforts were not active. That the Department may make similar efforts in a non-ICWA case does not mean the efforts are passive. Doe has cited no authority for such a proposition, and we reject the notion that reasonable efforts in a non-ICWA case cannot also be characterized as active efforts, particularly as defined by federal regulation. We also reject Doe's

argument that the magistrate court's findings are "exaggerated" or that the magistrate court erred in finding the Department engaged in active efforts in this case. The Idaho Supreme Court's opinion in *Doe (2014-23)*, 157 Idaho 920, 342 P.3d 632, is instructive.

In *Doe (2014-23)*, the Supreme Court also addressed a claim that the Department did not engage in active efforts as required by the ICWA. In rejecting the claim in that case, the Supreme Court stated:

> There is substantial and competent evidence to support the magistrate court's finding that DHW made active efforts to prevent the breakup of the family. The State arranged for weekly supervised visits with [the child] that would give the parents the opportunity for feedback with regard to the challenges they faced in caring for him, but Doe discontinued participation in the visitation sessions. [The child] was enrolled in a form of individual counseling specifically designed to strengthen his relationship with his parents and Doe was encouraged to participate, but attended only a handful of times. [The child] was scheduled for regular medical and therapeutic appointments for the purpose of understanding and addressing his developmental delays, but Doe never attended more than a few. DHW arranged for Doe to take parenting classes, but she dropped out and did not return. Finally, DHW arranged for Doe to participate in multiple drug and alcohol treatment programs and, though Doe completed one such program, she eventually dropped out of another and resumed her regular abuse of alcohol.

*Doe (2014-23)*, 157 Idaho at 925, 342 P.3d at 637.

Similar to *Doe (2014-23)*, and as found by the magistrate court in this case, the Department referred Doe for services, approved tribal resources, made transportation available, and offered Doe assistance, but she did not take full advantage of the opportunities made available to her. Doe's failure to do so does not equate to a lack of active efforts by the Department. *See id.*; *see also Doe v. Roe*, 127 Idaho at 458-59, 902 P.2d at 483-84 (concluding Department made active efforts but father refused to engage in services offered). As Doe acknowledges, her "incarceration surely frustrate[d] the amount of efforts the Department [could] give." Although Doe was not incarcerated throughout the entirety of the case, she did not complete her case plan or engage in the services offered while out of custody. Substantial and competent evidence supports the magistrate court's finding that the Department satisfied the ICWA's active efforts requirement.

12

## IV.

## CONCLUSION

The magistrate court's findings that Doe abandoned and neglected the child, that the Department made active efforts under the ICWA, and that termination is in the child's best interests are supported by substantial and competent evidence. Doe has failed to show error in the magistrate court's decision to terminate her parental rights. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.